IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Rosetta M. Leeper,         :

    Plaintiff,        :

    v.                :      Case No.  2:08-cv-727

                      :      JUDGE FROST
Verizon Wireless, et al.,
                      :

    Defendants.       :

ORDER

This case is before the Court to resolve a number of discovery issues.  Further discussion of these issues can be found in the transcript of a discovery conference held on June 15, 2009 (#60).  For the reasons that follow, the Court will direct defendant Verizon to provide some additional information to Ms. Leeper (to the extent that such information exists) concerning charges or lawsuits based on discrimination filed by other Verizon employees.

I.

First, the Court addresses several motions which were filed concerning Verizon's efforts to take Ms. Leeper's deposition. Based on its discussions with the parties at a number of discovery conferences which have been conducted, the Court believes that any issues relating to the taking and the continuation of Ms. Leeper's deposition are now resolved and that her deposition has been completed.  That being so, the motions which were filed relating to that deposition (#40, #41, and #44) are all moot and shall be removed from the Court's pending motions list.

II.

The next issue to be addressed is Verizon's withholding of

certain documents, and its redacting of others, in order to protect material that is privileged from disclosure. In order to resolve any issue about documents that were either withheld from production or redacted by Verizon based on the attorney-client or work product privileges, the Court requested that those documents be submitted for its review. Verizon did so on July 23, 2009, and the Court has reviewed all of the submitted documents. It appears that all of them are either communications to or from an attorney for the purpose of obtaining legal advice, which communications are privileged from disclosure, see Chubb Integrated Systems v. National Bank of Washington, 103 F.R.D. 52 (D.D.C. 1984), or are notes or results of investigations made at the direction of an attorney in connection with either the claims leading to this suit or prior claims asserted by Ms. Leeper. Those types of documents are protected from disclosure by the work product privilege. See Fed.R.Civ.P. 26(b)(3); Toledo Edison Co. v. G. A. Technologies, Inc., 847 F.2d 335 (6th Cir. 1988). Thus, all of these documents were properly withheld or redacted.

III.

The only other issue relating to discovery which has not been resolved - because the Court believes that all other issues raised in Ms. Leeper's motion to compel and amended motion to compel have been satisfied by Verizon's supplemental discovery responses, as detailed in document #57, or mooted by the Court's order denying Ms. Leeper's motion for reconsideration - is whether Verizon is obligated to produce more information about charges of discrimination leveled against it than what it has already produced. At the Court's request, Verizon briefed this issue. See document #49. For the following reasons, the Court will order more discovery on this issue.

In her interrogatories, Ms. Leeper has asked Verizon to identify all types of discrimination charges filed against it

with either the EEOC or the OCRC, or lawsuits making the same allegations, for all Verizon locations and for a seven-year period. Verizon actually produced information for a two-year period limited to the same division and facility at which Ms. Leeper worked, and limited to the same types of discrimination she claims in this case. The question is whether Ms. Leeper is entitled to any additional information beyond what Verizon has produced.

This Court has frequently dealt with the issue of placing reasonable limits on the amount of discovery that an employment discrimination plaintiff is entitled to concerning allegations of discrimination made by other employees. Certainly, some discovery about similar charges made by similarly-situated coworkers is relevant because it may lead to information about how specific management employees make decisions, whether those employees regularly take impermissible factors into account in disciplining or terminating employees, and whether their actions demonstrate a pattern of discrimination against certain groups. On the other hand, as the location of the coworkers, the identity of the decision-makers, and the type of discrimination alleged become more remote, the relevancy of the information diminishes to the point where the cost-benefit analysis mandated by Fed.R.Civ.P. 26(b)(2)(C)(iii) limits what an employer is required to produce. That Rule provides that the court "must limit the frequency or extent of discovery" if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Of course, discovery is limited in the first instance to matters that are "relevant to any party's claim or defense" and which are "reasonably calculated to lead to the discovery of admissible

evidence." Fed.R.Civ.P. 26(b)(1).

One of the most important aspects of this analysis in the context of an employment discrimination case is where the decision was made which affected the plaintiff. In order to obtain information about how workers were treated in other locations (assuming, of course, that the employer in question operates in multiple locations), the plaintiff must show some likelihood that the same people, or the same policies, were involved at those other locations. As this Court has observed,

> In such cases courts have typically concluded that the appropriate scope of discovery depends upon whether there is credible information suggesting that an employer followed similar hiring policies or procedures both at the location where the alleged discrimination occurred and at other similar locations. If the location was clearly locally run, involved considerations unique to that location, and the hiring decisions were completely unaffected by company-wide policies or procedures, courts have generally restricted discovery to events at that location. On the other hand, if there is credible evidence of some larger policy in place which may have had an impact on local hiring decisions, courts will permit discovery concerning the nature of that policy and the extent to which it may have affected other similarly-situated job applicants at other locations where the policy was in effect. The Court of Appeals' decision in <u>Scales v. J.C. Bradford & Co.</u>, 925 F.2d 901, 907 (6th Cir.1991) is typical of such decisions and recognizes the fact-specific nature of the inquiry.

<u>Barr v. Smith & Wollensky Restaurant Group</u> 238 F.R.D. 222, 223 (S.D. Ohio 2006).

The other two issues that frequently arise relate to the types of discrimination charges requested, and the appropriate time frame. Certainly, charges or lawsuits filed against an employer alleging the same type of discrimination as that alleged by the plaintiff may lead to the discovery of relevant evidence. <u>Moody v. Honda of</u>

America Mfg., 2006 WL 1785464, *6 (S.D. Ohio June 26, 2006). Charges made by other employees about other types of discrimination are less likely to be relevant, however. As far as the appropriate time frame is concerned, courts usually create a window of time around the date on which the plaintiff alleges that a discriminatory act took place, and allow discovery of charges filed both before and after that date. See, e.g., Moore v. Abbott Laboratories, 2007 WL 4171627, *6 (S.D. Ohio November 20, 2007), citing Miller v. Federal Express, 186 F.R.D. 376 (W.D. Tenn. 1999); see also Craig v. Exxon Corp., 1998 WL 850812 (N.D. Ill. December 2, 1998)(recognizing that post-termination conduct can be as relevant as pre-termination conduct). In Moore, this Court allowed discovery of such information for a four-year period of time because the case involved multiple decisions made by the employer over a six-month time frame. In other cases, a shorter time period, such as two or three years, is reasonable. See, e.g., Finch v. Hercules, Inc., 149 F.R.D. 60 (D. Del 1993).

Before applying these principles to the facts of any particular case, the Court must have before it information about how the particular employer operates its business, about the overlap of policies and decision-making personnel from location to location, and about how the specific decision at issue in this case was made. Verizon has submitted two affidavits which address these issues, and the information in those affidavits forms the factual basis for the Court's analysis.

At the time of her termination, Ms. Leeper was employed in the Dublin, Ohio call center. That center is one of ten call centers operated by Verizon in its Midwest Area. The area headquarters is in Schaumburg, Illinois.

Ms. Leeper was assigned to the Customer Financial Services area of the Dublin call center. That is the only such office in Verizon's Midwest Region, although there were two others prior to January, 2008. The management personnel involved in the operation of that area include Duane Wruble, who supervises eight employees at the Dublin Facility, his supervisor, Tony Yannone, and a human resources manager, Hilda Bebo. Those are the people who would be involved in terminating any employee for a violation of Verizon's Code of Conduct, which is the reason given for Ms. Leeper's termination. The area in which Ms. Leeper worked also involved some lower level managers with the title of Credit Review Supervisor. One of them, Tracey Darovich, was also involved in the decision to terminate Ms. Leeper's employment. Ms. Leeper claims that the reason given for her termination was a pretext for discrimination on the grounds of race, sex, retaliation for engaging in protected conduct under Title VII, and disability.

Given the fact that Ms. Leeper worked in only one of Verizon's many call centers, and that she worked in a particular segment of that call center, it is clear that company-wide discovery, covering all of Verizon's domestic locations, and for a period of seven years, is grossly overbroad. In this case, based upon the information provided by Verizon, the correct focus of such discovery would appear to be on the supervisors who were involved in the decision to terminate Ms. Leeper's employment. Although Verizon appears to argue that information about any terminated or disciplined employee who worked anywhere but the Dublin Customer Financial Services division of that call center is irrelevant, to the extent that these same management employees were involved in discipline of others

who held positions similar in nature to Ms. Leeper's (even if they dealt with some other aspect of customer service), the bases of their decisions to discipline or terminate such employees is relevant (at least for discovery purposes), and therefore whether such employees complained about such adverse employment action on the same grounds advanced by Ms. Leeper is reasonably calculated to lead to the discovery of relevant evidence. Further, as explained above, their post-termination conduct may also be relevant.

Distilling all of this down to a concrete description of what Verizon is obligated to provide, the Court holds as follows. Both the geographic and managerial issues are resolved by focusing on discipline, including termination, imposed or recommended by Tracey Darovich, Duane Wruble, and Tony Yannone, regardless of whether the disciplined or terminated employee worked in the Customer Financial Services Division or some other division of a Verizon call center, and regardless of whether the disciplined or terminated employee worked in Dublin or some other Midwest Area call center. The time frame should include two years before, and one year after, Ms. Leeper's termination.

IV.

Based on the foregoing, Verizon shall, within fifteen days, supplement its answers to Ms. Leeper's interrogatories by providing information about charges filed with the EEOC or OCRC, or lawsuits filed, from a date two years before Ms. Leeper was terminated to a date one year after she was terminated, by any Verizon call center employee who was either disciplined or terminated (or whose discipline or termination was recommended) by any of the following managerial employees: Tracy Darovich, Duane Wruble, and Tony Yannone. This information shall be limited to charges of

discrimination based on race, sex, retaliation for engaging in protected conduct under Title VII, or disability. To that extent, the motion to compel discovery (#51, as amended by #55) is granted. All other aspects of those motions are denied.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.


/s/ Terence P. Kemp
United States Magistrate Judge