UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROSETTA LEEPER,
        Plaintiff,

v.

VERIZON WIRELESS, et al.,
        Defendants.

Case No. 2:08-CV-0727
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendant Verizon Wireless' ("Defendant or "Verizon Wireless") Motion for Summary Judgment (Doc. # 65), Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. # 71), Defendant's Reply Memorandum in Support of its Motion for Summary Judgment and Objections to Plaintiff's Evidence ("Defendant's Reply and Request to Strike") (Doc. # 72), Plaintiff's Reply in Support of Plaintiff's First Response to Defendant's Motion for Summary Judgment ("Plaintiff's Surreply") (Doc. # 73), and Defendant's Objections and Responses to Plaintiff's Surreply ("Defendant's Objections to Surreply") (Doc. # 74). For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**I. Facts**

On July 18, 2005, Plaintiff Rosetta Leeper ("Plaintiff") began working for Cellco Partnership d/b/a Verizon Wireless at its Dublin, Ohio facility call center. Plaintiff initially worked in the customer financial services division as a collections representative. After an approximate six-month leave of absence between December 2005 and June 2006, Plaintiff

1

returned to work. Shortly after her return to work, Plaintiff moved from the collections division to the credit review department and, in late 2006, began reporting to Supervisor Tracey Darovich.

On August 24, 2006, Plaintiff filed a charge of disability discrimination with the Ohio Civil Rights Commission ("OCRC") ("August 2006 OCRC Charge"). On March 27, 2007, Plaintiff and Defendant settled the matter.

Plaintiff was promoted to a senior credit review representative and she held that position until she was terminated in March 2008. As a senior credit review representative, Plaintiff provided customer service by reviewing new credit applications and requests from existing customers to determine eligibility for services. Plaintiff's job duties included providing customer service in a helpful, courteous, and professional manner. Defendant has its standards for employee conduct set forth in its "Code of Conduct" and in its "Policy on Customer Service Conduct Violations." (Doc. # 65, Ex. A, Hilda Bebo Declaration[1] ¶ 5 Tab 1.) Plaintiff completed training on and was familiar with the Code of Conduct and Policy on Customer Service Conduct.

On September 29, 2007, Plaintiff placed a call to a Verizon Wireless employee at West Credit Review (a department outside the Dublin Verizon Wireless facility) during which she asked for the employee's extension and last name. After the employee explained that she did not give out such information, Plaintiff requested to speak to the employee's supervisor. During her conversation with the supervisor, Plaintiff referred to her exchange with the West Credit employee as "stupid," "ridiculous" and "ignorant." (Docs. # 65, 66, Plaintiff's Deposition ("Pl.

---

[1]Ms. Bebo is the Manager of Human Resources for Field Operations at Verizon Wireless.

Dep.") Exs. 6, 7, Audio Recording). The supervisor provided Plaintiff with the employee's information, and tried to determine why Plaintiff remained agitated. Plaintiff did not respond to the question, and then abruptly ended the call while the supervisor was still on the line.

Plaintiff's supervisor was informed of Plaintiff's behavior through an email from the West Credit supervisor in which she complained about Plaintiff's conduct. On October 11, 2007, Plaintiff received a "Written Warning" for rude and unprofessional behavior toward a supervisor, including her tone, speaking over a superior, and termination of the call. (Doc. # 65, Ex. C, Tracy Darovich Declaration ("Darovich Decl.") ¶ 7, Tab 1.) The Written Warning indicated that "[a]ny further instances of disrespect and/or hanging up on a co-worker or any other policy or code of conduct violation may lead to further disciplinary action up to and including termination of employment." *Id.*

On October 19, 2007, Plaintiff had an argument with another employee "on the call center floor." *Id.* ¶ 9. Supervisor Darovich testified that the "argument was so loud that [she] came out of [her] office to investigate the situation." *Id.* During the argument, Plaintiff used the terms "simple" and "dumber than a box of rocks." (Pl. Dep. 109-111.) Plaintiff testified that she used those terms to refer to the situation, not to her coworker. Plaintiff refers to this incident as a "breakdown" during which "it was almost like [she] blacked out for a minute." (*Id.* at 104, 108-113.)

On November 1, 2007, Plaintiff received a "Final Written Warning" based upon this incident. (Darovich Decl. ¶ 7, Tab 1.) The Final Written Warning indicated that "[a]ny further instances of disrespect a co-worker, or any other policy or code of conduct violation, may lead to further disciplinary action up to and including termination of employment." *Id.*

On February 22, 2008, Plaintiff answered an incoming call from an agent attempting to process a credit application on behalf of a Verizon Wireless customer or potential customer. When she learned that the agent had not completed an application, Plaintiff told the agent that she could not help him. The agent pleaded with Plaintiff to stay on the line, indicating that he had been on hold for an extended period of time and it would only take him minute to open the application. Plaintiff stated that she would not stay on the line and hung up the phone. (Docs. # 65, 66, Pl. Dep. Ex. 9, Audio Recording).

On March 18, 2008, Plaintiff was terminated as a result of this call and the other two disciplines just described, all of which occurred within a six-month period.

On July 25, 2008, Plaintiff filed this action against Verizon Wireless and several of its employees, alleging that Verizon Wireless and all individually named defendants discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 *et seq.* as amended ("Title VII") and the Americans with Disabilities Act, 42 U.S.C. §§ 1211 *et seq.* ("ADA"). Plaintiff alleged discrimination based upon race, gender, and disability. Plaintiff also alleged that Verizon Wireless engaged in unlawful retaliation when it terminated her and subjected her to other alleged retaliatory actions.

On December 8, 2008, all of the defendants filed a motion to dismiss the complaint in part. (Doc. # 15.) On March 3, 2009, the Court granted that motion, thereby dismissing all of the claims filed against the individually named defendants and all of the claims filed against Verizon Wireless except for the ADA and Title VII claims specifically related to events that occurred after March 27, 2007. (Doc. # 25.) On May 11, 2009, Plaintiff filed a motion for relief from that decision (Doc. # 36) that this Court denied on July 1, 2009. (Doc. # 53).

4

Defendant has now moved for summary judgment on all of the remaining claims against it. That motion is ripe for review.

## II. Defendant's Motion for Summary Judgment

### A. Standard

Rule 56 of the Federal Rules of Civil Procedure provides for judgment as a matter of law if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue as to any material fact, the evidence "must be viewed in the light most favorable" to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

### B. Analysis

Plaintiff presents circumstantial, as opposed to direct, evidence of discrimination and retaliation, and, as a result, the Court applies the familiar three step burden shifting framework originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). The initial burden rests

with the plaintiff to establish a *prima facie* case of discrimination or retaliation. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. *Burdine*, 450 U.S. at 253. Should the employer carry this burden, the burden returns to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext designed to mask illegal discrimination or retaliation. *See id.*

### 1. Disability Discrimination

To establish a *prima facie* case of disability-based discrimination under the ADA, a plaintiff must establish each of the following five elements:

> (1) that he or she is disabled; (2) is otherwise qualified for the job, with or without "reasonable" accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of his or her disability; and (5) after rejection or termination, the position remained open or the disabled individual was replaced.

*Monette*, 90 F. 3d at 1185 (internal citations omitted). The final element "may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Jones v. Potter,* 488 F.3d 397, 404 (6th Cir. 2007) (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)).

"The threshold issue in any action brought under the ADA is whether the plaintiff is a person with a disability." *Kiphart v. Saturn Corp.*, 251 F.3d 573, 582 (6th Cir. 2001). The ADA provides:

> (1) Disability. The term "disability" means, with respect to an individual --
>
> > (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1).

In the instant action, Defendant argues that Plaintiff's disability discrimination claim for relief cannot survive summary judgment because Plaintiff was not actually disabled nor did Defendant regard her as disabled. Defendant's arguments are well taken.

### a. Category (1): actually disabled

Plaintiff claims that she was disabled based upon a collection of conditions associated with her left shoulder, arm, wrist, and hand, including shoulder surgeries due to a previous injury and diagnoses of carpal tunnel and cubital tunnel syndromes. There is no dispute that Plaintiff's conditions qualify as physical impairments under the ADA. Thus, the issue before the Court is whether Plaintiff's impairments substantially limited any major life activity. Substantially limits means that an individual is "[u]nable to perform a major life activity that the average person in the general population can perform; or" is "[s]ignificantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(i) and (ii).

Plaintiff argues that she is substantially limited in the major life activities of working, lifting, and in performing repetitive motions. Working is treated as a residual category resorted to only when a complainant cannot show that he or she is substantially impaired in any other, more concrete major life activity. *Henderson v. Ardco, Inc.*, 247 F.3d 645, 650 (6th Cir. 2001); 29 C.F.R. § 1630.2(j). Thus, the Court will first address Plaintiff's allegations regarding lifting

7

and repetitive motions before it considers her allegations related to the major life activity of working.

### i. Lifting and repetitive motions

With regard to lifting, the Equal Employment Opportunity Commission's ("EEOC('s)") Interpretive Guidance specifically includes "lifting" as a major life activity. 29 C.F.R. pt. 1630, App. § 1630.2(i); *see Penny v. UPS*, 128 F.3d 408, 414 (6th Cir. 1997) (addressing lifting is a major life activity). Plaintiff argues that her impairments "substantially limit and restrict the ability to lift." (Doc. # 71 at 6 of 22.) The only evidence before the Court related to Plaintiff's inability to lift is her deposition testimony in which she stated that she was unable to lift laundry baskets to carry them to her basement. This evidence, however, falls far short of showing that Plaintiff is unable to perform lifting that the average person in the general population can perform or that Plaintiff is significantly restricted as to the condition, manner, or duration under which she can lift as compared to the condition, manner, or duration under which the average person in the general population can perform the activity of lifting. *See Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 598 (6th Cir. 2002) ("As we have held, '[a] single conclusory statement about an alleged substantial limitation is not enough to avoid summary judgment sought by the employer.' ") (citations omitted).

With regard to Plaintiff's alleged inability to perform repetitive motion, courts categorize this complaint in the major life activity of performing manual tasks. *See e.g., Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184 (2002)[2] (carpal tunnel syndrome allegedly preventing

---

[2]This case was abrogated in part by the ADA Amendments Act of 2008, which took effect on January 1, 2009, Pub. L. No. 110-325, 122 Stat. 3553 (2008). The amendments, however, are not retroactive and have no application to the case at bar. *Millholland v. Summer*

8

repetitive motion analyzed under major life activity of performing manual tasks). Similar to Plaintiff's failure above, she here too fails to offer evidence that indicates that she was unable to perform repetitive motions that the average person in the general population can perform. Indeed, Plaintiff argues only that "repetitive motions [are] both difficult and painful." (Doc. # 71 at 5.) However, having difficultly or pain when performing major life activities is not the same as being substantially limited in those activities. *See Mahon v. Cromwell*, 295 F.3d 585, 591 (6th Cir. 2002)[3] ("The record does show that his back impairment causes him distress and limits him in performing some activities, but based on the evidence presented we cannot say he is severely restricted in any of them.").

Further, Plaintiff also ignores her own admissions with regard to her abilities to perform manual tasks. That is, Plaintiff testified that she could wash her face, brush her teeth, comb her hair, bathe herself except for reaching her back, wash her hair but not as often as she previously could, wash dishes, and pick up around the house once a week. Additionally, in the year preceding her termination, Plaintiff went to a gym two to three times a week where she would run and/or walk on a treadmill approximately four miles and swim. A few months before her termination, Plaintiff took a second job in a daycare where she tended to two to three year old children, feeding them, reading to them, playing with them, and changing their diapers.

Finally, the Court notes that even if Plaintiff had shown that her left shoulder, arm, wrist,

---

*Co. Bd. Of Educ.*, 569 F.3d 562, 567 (6th Cir. 2009).

[3]*Mahon* is a disability discrimination case brought under the Rehabilitation Act, 29 U.S.C. § 794(a), which provides a remedy for federal employees alleging disability discrimination. In this Circuit the ADA and the Rehabilitation Act "share the same substantive standard," thereby permitting reliance on case law under either statute to support claims under either statute. *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).

9

and hand impairments substantially limited her ability to lift or to perform manual tasks, she testified that the limitations were alleviated as long as she took her pain medication. (Pl. Dep. at 397) ("I can do all of these things as long as I take medication every day every four hours."). This Court must consider Plaintiff's medicated condition. *See Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999) (must consider mitigating measures).[4]

Consequently, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether her impairments substantially limited her ability to lift or perform manual tasks.

### ii. Working

Turning to Plaintiff's alleged substantial limitation in her ability to work, the Sixth Circuit instructs that she must be limited not just from her particular job, but from a substantial class or broad range of jobs:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Mahon*, 295 F. 3d at 591 (quoting *Sutton*, 527 U.S. at 492). Further, the court explained:

> To determine if the claimant is precluded from a substantial class or broad range of jobs, we compare his access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in the claimant's geographic vicinity.

*Id.* (citing *Sutton*, 527 U.S. 491-92 and *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247,

---

[4]*Sutton* was overruled in part by the ADA Amendments Act of 2008. *Millholland*, 569 F.3d at 566. As stated above, however, the amendments are not retroactive. *See id.* at 567 (concluding that "the ADA Amendments Act does not apply to pre-amendment conduct").

10

253-54 (6th Cir. 2000)).

In the case *sub judice*, Plaintiff asserts that her left shoulder, arm, wrist, and hand impairments preclude her from the "ability to perform a class of jobs." (Doc. # 71 at 6 of 22.) However, Plaintiff fails to submit any evidence indicating that she was substantially limited in her ability to perform a class of jobs. Plaintiff makes no comparison of her access to jobs to the access available to a non-injured individual with similar training and experience. Indeed, the evidence shows that Plaintiff was not precluded from a substantial class or broad range of jobs because within approximately one month of her termination, Plaintiff accepted a position as a collections representative with another employer, in which she worked without any accommodations, until approximately December 2008. *See Mahon*, 295 F. 3d at 591 ("If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs.")

Thus, the Court finds that Plaintiff has failed to raise a genuine issue of material fact as to whether her impairments substantially limited her ability to work.

### iii. Conclusion of actually disabled category

The Court concludes that, even when viewing the evidence in the light most favorable to Plaintiff, she has failed to show that she is substantially limited in any major life activity. Consequently, Plaintiff cannot show that she is disabled under the ADA, which prevents her from setting forth a *prima facie* case of disability discrimination. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as it relates to Plaintiff's claim of disability discrimination based upon allegations of actual disability.

### b. Category (3): regarded as disabled

Plaintiff also asserts that Defendant regarded her as disabled. "This part of the [ADA] is intended to allow individuals to be judged according to their actual capacities, rather than through a scrim of 'myths, fears, and stereotypes' accruing around a perceived impairment." *Mahon*, 295 F. 3d at 592 (citing *Sutton*, 527 U.S. at 489-90). To determine whether an individual is "regarded as disabled," this Court must apply the test laid out in *Sutton*:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

*Id.* (citing *Sutton*, 527 U.S. at 489). "To run afoul of the act, then, a covered entity must hold a mistaken belief that a claimant is disabled within the meaning of the [ADA]." *Id.* (citing *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001)).

In the instant action, Plaintiff testified that Defendant perceived her as disabled based on "the medical documents that they received and based on the medical restrictions and the fact that [she] had to have [Family Medical Leave Act] and days off from work and special shifts." (Pl. Dep. at 408-09.) As Defendant correctly argues however, this is insufficient to establish that the Defendant regarded Plaintiff as disabled. *See Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 938 (6th Cir. 2000) (knowledge of an employee's medical problems and modification of responsibilities based upon them is not sufficient evidence that the company regarded the employee as disabled under the ADA); *Dabney v. Ohio Dep't of Admin. Servs.*, Case No. 2:04-CV-528, 2006 U.S. Dist. LEXIS 23435, at *28-29 (S.D. Ohio Mar. 22, 2006) (holding that "defendant's past accommodation of plaintiff's medical conditions does not demonstrate that defendant regarded

12

her as disabled").

Moreover, Plaintiff has not shown that Defendant regarded her as disabled under the ADA because she has not shown that Defendant held any mistaken belief about her. *See Mahon*, 295 F.3d at 592 ("Mahon has not shown that TVA regarded him as disabled under the statutes because he has not shown that TVA held any mistaken belief about him.").

The Court concludes that, even when viewing the evidence in the light most favorable to Plaintiff, she has failed to show that Defendant regarded her as substantially limited in any major life activity. Consequently, Plaintiff cannot show that she is disabled under the ADA, which prevents her from setting forth a *prima facie* case of disability discrimination. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as it relates to Plaintiff's claim of "regarded as" disability discrimination.

**2. Race and Gender Discrimination**

To establish a *prima facie* case of race or gender discrimination under Title VII, a plaintiff must show that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was treated less favorably than similarly situated members of the unprotected class. *See McDonnell Douglas*, 411 U.S. at 802; *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992)). In the instant action, Defendant argues that Plaintiff cannot set forth a *prima facie* case of discrimination because she cannot demonstrate that a comparable individual outside Plaintiff's protected class received more favorable treatment. This Court agrees.

An appropriate comparator is a coworker who is outside of the protected class or classes and is similarly situated in "all of the *relevant* aspects," yet received more favorable treatment

than Plaintiff. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)) (emphasis in original). Plaintiff is an African-American woman who held the position of a senior credit review representative. She had been disciplined three times in a six-month period for rude and unprofessional behavior that included using an unacceptable tone of voice, using harsh, demeaning and disrespectful words and phrases, speaking over a superior, arguing with a coworker, and termination of two calls. Additionally, Plaintiff had requested workplace accommodations for her physical impairments and at some point in her employment had filed discrimination charges with the OCRC against Verizon Wireless approximately 18 months prior to her termination.

As a similarly situated coworker for comparison, Defendant offers first, a white female senior credit review representative who reported to the same supervisor as did Plaintiff, who had no requests for workplace accommodations on file, and who was terminated on April 18, 2007 for refusing to assist an agent by looking up a credit application by the customer's social security number as requested and releasing the call. This individual had no previous Code of Conduct discipline on file at the time of her termination. Further, at no point had this individual filed an OCRC or EEOC charge of discrimination against Defendant.

Second, Defendants submit evidence of a white male credit review representative who reported to the same supervisor as did Plaintiff who was terminated on February 14, 2008 for hanging up on a call after the caller cursed at him. This individual had no requests for workplace accommodations on file and had one other Code of Conduct warning in his file at the time of his termination. At no point had the individual filed an OCRC or EEOC charge of discrimination

against Verizon Wireless.

This evidence is more than sufficient to show that Plaintiff was not treated less favorably than her similarly situated coworkers. Indeed, as Defendant correctly points out, the evidence indicates that Plaintiff was treated more favorably than her similarly situated coworkers, receiving more opportunities to modify her behavior than the two other individuals who reported to the same supervisor as Plaintiff and were terminated for the same reasons Plaintiff was terminated. Neither of these individuals received the benefit of the two written warnings Plaintiff received prior to her termination.

The Court concludes that, even when viewing the evidence in the light most favorable to Plaintiff, she has failed to show that a similarly situated person who was not in her protected classes received more favorable treatment than her. Consequently, Plaintiff cannot set forth a *prima facie* case of race or gender discrimination. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as it relates to Plaintiff's claim of race and gender discrimination.

### 3. Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: "that she engaged in protected activity; that the exercise of her civil rights was known by the defendant; that defendant thereafter took adverse employment action; and that a causal connection exists between the protected activity and the adverse employment action." *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588-89 (6th Cir. 1998) (citing *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)). Further, the evidence must be sufficient to raise an inference that the protected activity was the likely reason for the adverse action. *Id.* at 589 (citing *Zanders v. National R.R.*

*Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990)).

In addition to her discipline and termination Plaintiff testified that Verizon Wireless retaliated against her by requiring her to provide medical records to support her request for workplace accommodation, by "tampering with" and/or providing her with a faulty phone and computer, by failing to provide her with coaching opportunities, and by lying in wait for her to make a mistake. Defendant contends that only the termination and arguably the discipline constitute adverse actions and that Plaintiff cannot establish a *prima facie* case of retaliation because she cannot show that a causal connection exists between her alleged adverse actions and the protected activity. Defendant's arguments are well taken.

With regard to the adverse actions alleged by Plaintiff, the retaliation provision of Title VII "protects employees from conduct that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006)). A thorough review of the facts and arguments in this case, however, leads this Court to the firm conclusion that the incidents about which Plaintiff complains are too trivial to constitute materially adverse actions affecting her job and informing the issue of retaliation. None of these events considered in context would dissuade a reasonable worker from making or supporting a charge of discrimination.

As to the causal connection element of the retaliation claim, the evidence before the Court is insufficient to raise an inference that the August 2006 OCRC Charge was likely the reason for Plaintiff's termination and disciplines. The approximate 18 months that elapsed between the time she filed her 2006 OCRC Charge and her termination is hardly evidence of a

causal connection between the two. *See e.g., Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (holding that twenty-month gap between protected activity and termination suggests "no causality at all" for purposes of retaliation claim); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 463 (6th Cir. 2001) (no causal connection where two years had passed between filing of last EEOC charge and plaintiff's termination); *Jackson v. Pepsi Cola, Dr. Pepper Bottling Co., a Div. of RKO Bottlers of Toledo, Inc.*, 783 F.2d 50, 54 (6th Cir.1986) ("[T]he time span of over one year from the time [plaintiff] filed suit, to the time of his firing, mitigates against a finding of retaliatory discharge.").

In her opposition memorandum, Plaintiff argues that the relevant date for consideration is the date that the August 2006 OCRC Charge was settled as opposed to the time it was filed. That argument, however, does not alter this Court's conclusion. First, it is the date of the complaint, not the date settlement was reached that is more informing to the retaliation analysis because: "(1) unlike a settlement agreement, a complaint is clearly a protected activity under [Title VII], and (2) common sense dictates that employees are much more likely to be retaliated against for filing a complaint against their employer than for resolving the dispute with their employer by reaching a settlement agreement"). *Tennessee Valley Authority v. Frady*, No. 96-3831, 1998 U.S. App. LEXIS 608, at *9 n.1 (6th Cir. 1998) (analyzing retaliation under Energy Reorganization Act of 1974, 42 U.S.C.S. § 5851).

Second, Plaintiff simply cannot rest her case on the slight inference that she asserts exists in the timing of her discharge because "[a]lthough adverse action taken shortly after an exercise of a plaintiff's protected rights is relevant to the causation inquiry, temporal proximity alone is generally insufficient to establish a causal connection for a retaliation claim."

17

*Cushman-Lagerstrom v. Citizens Ins. Co. of Am.*, 72 F. App'x 322, 332 (6th Cir. July 30, 2003) (citing *Little v. BP Exploration*, 265 F.3d 357, 359 (6th Cir. 2001) and *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)). Moreover, the fact of temporal proximity alone here is particularly not compelling, because Plaintiff's retaliation case is otherwise weak, and there is substantial evidence supporting Defendant's version of the events. *See Nguyen*, 229 F.3d at 567 (the fact of temporal proximity alone was not particularly compelling, because the plaintiff's retaliation case was otherwise weak, and there was substantial evidence supporting the defendant's version of the events"); *see also Coulter v. Deloitte Consulting, L.L.C.*, 79 F. App'x 864, 867 (6th Cir. Nov. 4, 2003) ("[T]he temporal proximity argument is particularly unconvincing where a plaintiff's *prima facie* claim of retaliation is otherwise weak."). The Court easily concludes that, even when viewing the evidence in the light most favorable to Plaintiff, she has failed to set forth a *prima facie* case of retaliation. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as it relates to Plaintiff's retaliation claim for relief.

### III. Defendant's Reply and Request to Strike

In Defendant's Reply and Request to Strike, Defendant asks that the Court strike Plaintiff's Exhibits A, B, C, F, G, K, and L because they lack foundation and are unauthenticated. Defendant's request is well taken. The law is clear that "only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (internal quotations and citation omitted). However, the Court notes that even if these Exhibits were properly before the Court they would have done nothing to alter this Court's conclusions expressed in this Opinion and

Order.

## IV. Defendant's Objection to Surreply

In Defendant's Objection to Surreply, Defendant argues that Plaintiff's Surreply should be stricken because it violates this Court's September 9, 2009 Order and Local Rule 7.2(a)(2). This Court agrees.

On September 9, 2009, this Court issued an Order that amended the summary judgment briefing schedule in this matter. The Order stated that Plaintiff's memorandum in opposition to Defendant's motion for summary judgment was due October 19, 2009 and that Defendant's reply brief in support of its motion for summary judgment was due on October 29, 2009. (Doc. # 70.) The order did not provide for additional briefing. Additionally, Local Rule 7.2(a)(2) sets forth a similar schedule, allowing the nonmovant to file an opposition and the movant the opportunity to reply, but specifically states that "[n]o additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown." S.D. Ohio Civ. R.7.2(a)(2). Plaintiff did not move for leave to file Plaintiff's Surreply. Consequently, the Court shall disregard the Surreply. However, the Court notes that even if this Surreply was properly before the Court it would have done nothing to alter this Court's conclusions expressed in this Opinion and Order.

## V. Conclusion

For the reasons set forth above, the Court **GRANTS** Verizon Wireless' Motion for Summary Judgment. (Doc. # 65.) The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

                                                  /s/ Gregory L. Frost
                                                  GREGORY L. FROST
                                                  UNITED STATES DISTRICT JUDGE